# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
STEPHEN A. RAHER, LAW CLERK

May 25, 2011

Tara J. Schleicher
Farleigh Wada Witt
121 SW Morrison St., Suite 600
Portland, OR 97204

David A. Foraker
Greene & Markley PC
1515 SW Fifth Ave., Suite 600
Portland, OR 97201

Re: <u>McKittrick v. National Fuel Marketing</u>, Adv. Proc. 11-3039

Dear Counsel:

    On May 4, the court held a hearing on the parties' cross-motions for summary judgment in the above-referenced proceeding. At that hearing, I advised counsel of my tentative thoughts on the respective motions. I write today to advise you of my decision.

    As to the payments for the baseload gas and related transportation charges, I adhere to my previous comments and grant the defendant's motion for summary judgment based on its forward-contract defense.

    I have carefully reviewed the briefs and considered the arguments made at the May 4 hearing regarding the swing-load gas and related transportation payments. For the reasons I explained at the hearing, the swing-load agreements are not commodity forward agreements. Defendant argues that the swing-load payments qualify as payments under a swap agreement, citing § 101(53B)(A)(i)(II)'s reference to "spot, same day-tomorrow, tomorrow-next, forward, or other . . . commodity agreement." Def. Reply at 4. Neither party has presented sufficient evidence to establish whether or not, according to industry standard, the payments qualify as payments on a swap agreement under 11 U.S.C. § 546(g). See Edward R. Morrison and Joerg Riegel, "Financial Contracts and the New Bankruptcy Code: Insulating Markets from Bankrupt Debtors and Bankruptcy Judges," 13 ABI L. Rev. 641, 641 (2005) (a transaction is a swap "if it is treated as such in the relevant financial market").

Defendant sought to establish that the marketplace would treat the swing-load contracts as swaps through two declarations of Brenda K. Mayland. Ms. Mayland's supplemental declaration recites her qualifications and states her opinion, as follows:

> 2. I am competent to testify to the matters in this declaration. The statements herein are based on my personal knowledge or on NFM's business records.
>
> 3. I am NFM's Chief Financial Officer ("CFO"). As CFO, my duties include the maintenance of NFM's accounting and other business records, preparation of financial statements, and the negotiation and administration of contracts for the purchase, sale or trade of natural gas.
>
> 4. In the natural gas industry, a "spot" transaction is the same as a "swing" transaction and those terms are used interchangeably by market participants. "Same day-tomorrow" and "tomorrow-next" agreements or transactions are specific kinds of "spot" or "swing" agreements or transactions. A "spot" or "swing" transaction is one where the natural gas that is the subject of the transaction is to be purchased, sold or transferred in less than two days after the transaction is agreed to by the counterparties to the contract.

While Ms. Mayland's declarations establish her competency to testify as to NFM's financial practices, they do not establish that she is an industry expert. Absent such expertise, statements about how the industry views particular contracts are at most personal opinions, probably based on hearsay.

The plaintiff's argument that the swing-load contracts are not swaps largely relies on the premise that simple supply contracts are not within the scope of the swap safe-harbor. This argument does find support in the legislative history to the pertinent 2005 amendments which "contains multiple warnings that the [Bankruptcy] Code's protections [of swaps] should not shelter ordinary commercial transactions." Morrison and Riegel, at 657. However, as mentioned before, the statute is primarily concerned with market-based definitions, and plaintiff did not provide competent evidence that the industry would view the swing-load arrangement as an ordinary commercial transaction, and not a swap.

    For the reasons discussed herein, I deny both parties' motions as to the swing-load and related transportation payments. Mr. Foraker should submit an order denying plaintiff's summary judgment motion, granting defendant's motion with respect to the baseload gas and related transportation charges, and denying the balance of defendant's motion.

    Very truly yours,

Elizabeth L. Perris
Bankruptcy Judge